**This Opinion is a
Precedent of the TTAB**

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**

Goodman

Mailed: December 7, 2011

Concurrent Use No. 94002400

Holmes Oil Company, Inc. (by
assignment from R. Dwayne
Meadows)

v.

Myers Cruizers of Mena, Inc.

Before Bergsman, Shaw and Kuczma, Administrative Trademark
Judges.

By the Board:

By way of background, the parties were involved in
Opposition No. 91165855 wherein the parties stipulated to
dismissal of the opposition proceeding in favor of a
concurrent use proceeding.[1]  Concurrent Use No. 94002400 was
instituted on May 28, 2009, involving concurrent use
applicant Holmes Oil Company, Inc.'s (hereinafter Holmes)

---

[1] The parties filed a consent to terminate the opposition
proceeding in favor of the concurrent use proceeding and to enter
an amendment in the form of a geographic restriction to
applicant's involved application.  The parties' did not file any
agreements with the stipulation.

concurrent use application Serial No. 78241974 for the mark



for "retail store services featuring convenience store items and gasoline." Holmes' area of use is identified in the application as "the area comprising the United States except for the state of Arkansas." The notice instituting the proceeding identified Registration No. 2550461 for the mark MYERS CRUIZZERS DRIVE-IN for "restaurant services," owned by Myers Cruizers of Mena, Inc. (hereinafter Myers) as an exception to Holmes' otherwise exclusive right to use the mark.

On August 6, 2009, Myers filed a motion to implement the parties' consent agreement, which provides for Holmes to obtain a territorially restricted registration while Myers' registration remains unrestricted. Myers submits that the parties "consented to a dismissal of the Opposition Proceeding and initiation of the Concurrent Use Proceeding for the sole purpose of implementing their settlement agreement." Myers argues that the Board must give great weight to the parties' consent agreement, advising that the parties did not intend for Myers' incontestable Registration No. 2550461 to be subject to the Board concurrent use

proceeding (i.e., be geographically restricted) as "the Registrant is the senior user in ALL RESPECTS. . . ." Myers asserts that as reflected in the parties' confidential consent agreement, the parties consider "the marks and services different, and there has been no finding of likelihood of confusion [by the Board, the United States Patent and Trademark Office or a court of competent jurisdiction] with respect to clearly overlapping territorial use of such marks." Myers points out that in the agreement Holmes "is legally barred from . . . objecting to 'MYERS' use and/or registration of any mark comprising the term CRUIZZERS in connection with restaurant services and the ancillary items." Myers further asserts that if the Board cannot "issue a restricted registration to Holmes without restricting the Myers Registration [to the state of Arkansas] . . . Myers does not consent to the concurrent use application of Holmes." In a separate filing, Holmes has agreed for the most part with Myers' statements, noting the "substantial differences between the marks . . . and the goods and services."

In a concurrent use proceeding, the Board determines whether one or more applicants are entitled to a registration, generally with a geographic restriction, and whether the involved parties, which can be applicants, registrants or mere users of marks, can coexist without a

likelihood of confusion among consumers.  Trademark Rule 2.99(h); Trademark Rule 2.133(c); TBMP § 1101.02 (3d ed. 2011).  The applications and/or registrations involved in a concurrent use proceeding generally include every potentially conflicting application or registration identified in the concurrent use application as being owned by a party listed as an exception to the concurrent use applicant's claim of otherwise exclusive use.  TBMP § 1104 (3d ed. 2011).[2]

In this case, we find that Myers, as the former opposer in Opposition No. 91165855 (dismissed in favor of the present concurrent use proceeding) is properly identified as an excepted user in this case, and that its Registration No. 2550461 is properly subject to this proceeding.  See TBMP § 1104 (3d ed. 2011).

---

[2] A concurrent use applicant generally acknowledges the marks, applications and registrations of other parties that could create a conflict in the absence of a geographic restriction of the applicant's application, and, potentially, the application(s) or registration(s) of the identified party or parties.  The applicant's choice of which applications or registrations of another party would be in conflict but for the restriction(s) is, of course, subject to being contested by the owner of such registration(s), who may argue that the mark in a particular application or registration would create no conflict even in the absence of restriction(s).  Similarly, the applicant's designation of the extent of conflicting applications or registrations is not binding on the Board, which may determine that one or more applications or registrations not acknowledged by the applicant as conflicting actually could create a conflict.  Thus, the Board is able, in a concurrent use case, to order that such applications or registrations be added to the proceeding.  TBMP § 1104 (3d ed. 2011).

Generally, in a concurrent use proceeding, a party seeks acknowledgment of the right to use its mark in a limited geographic area and obtain registration of its mark restricted to this geographic area. Ultimately, the geographic restriction is fixed by the Board when the Board determines that such restriction will aid in avoiding confusion of consumers. Traditionally, the geographic territories identified in a concurrent use settlement agreement are mutually exclusive. In contrast, if the parties enter into a consent agreement, rather than a concurrent use agreement, in order to overcome a refusal of registration on the ground of likelihood of confusion, such an agreement generally allows for each party's use in overlapping territories and does not result in geographic restrictions being placed on any party's registration, with the result being that each party obtains an unrestricted registration, subject to the parties' consent agreement or contractual arrangement concerning use and registration.

Here, Holmes has agreed to a geographic restriction to the registration it seeks, as part and parcel of the consent agreement with Myers, not because a geographic restriction is necessary. Holmes seeks a geographic restriction excluding the state of Arkansas, with its use being allowed in the remainder of the United States. Myers desires to maintain the geographically unrestricted status of its Registration No. 2550461. Thus, although this case is

5

captioned as a concurrent use proceeding, it is only nominally one as the parties' agreement provides that they will operate in overlapping territories.[3]

Because Holmes' right to a geographically restricted registration may only be considered in the context of a concurrent use registration proceeding, see Trademark Rule 2.99(h), the Board has considered the parties' agreement in this context, mindful that the parties have entered into what is, in all other respects, a traditional consent agreement. The geographic restriction is incidental, not central to, or perhaps not even necessary to the consent agreement; but the parties have agreed to the restriction.

The mere existence of a consent agreement will not always and automatically result in a finding of "no likelihood of confusion." A "naked" consent, i.e., one that does not provide a basis for consent to register or use but merely provides consent, is entitled to little probative weight in the likelihood of confusion analysis. *See e.g., In re E. I. DuPont de Nemours & Co*., 476 F.2d 1357, 177 USPQ 563, 568 (CCPA 1973). On the other hand, a consent agreement which includes information as to why the parties believe confusion is unlikely, which evidences the parties' business-driven belief and conclusion that there is no

---

[3] Except for the state of Arkansas, the parties' areas of use are overlapping.

likelihood of confusion, and which includes provisions to avoid any potential confusion, is entitled to great weight in favor of a finding that confusion is not likely. *In re Four Seasons Hotels Ltd.*, 987 F.2d 1565, 26 USPQ2d 1071 (Fed. Cir. 1993); *Bongrain Int'l (Am.) Corp. v. Delice De France, Inc.*, 811 F.2d 1479, 1 USPQ2d 1775 (Fed. Cir. 1987). The persuasiveness of the consent agreement depends on the reasons the parties give as to why they have reached the conclusion that confusion is not likely. Thus, the more information that is in the consent agreement as to why the parties believe confusion to be unlikely (e.g., differences in the goods, differences in channels of trade, and sophistication of purchasers), and the more support for such conclusions is demonstrated, either by the facts of record or by way of the undertakings of the parties in the agreement, the more the Board can assume that the consent is based on the parties' reasoned assessment of the marketplace. The Board will also consider the circumstances under which the consent agreement was reached, such as whether the agreement is the result of the settlement of litigation (e.g., Board proceedings or civil litigation) between the parties.

In the present case, Myers had filed a notice of opposition against Holmes' application Serial No. 78241974. The withdrawal of the opposition proceeding by Myers, and

the institution of this concurrent use proceeding, resulted from the parties' consent agreement.[4]  The parties' agreement provides the basis for the parties' consent, which is to resolve trademark claims which have arisen or may arise.  The agreement also includes provisions to address actual confusion and the measures the parties will take should actual confusion arise.  Lastly, the agreement indicates the nature of each party's use and includes restrictions on use.[5]

We note that this agreement could be improved upon by including a more detailed statement listing of steps the parties will take should cases of actual confusion arise and an explanation of the reasons for the parties' belief that confusion is not likely.  Here, however, the parties did submit into the record their requests to implement the settlement agreement in which they indicate their belief that confusion is not likely by such statements as "the marks are different for different services" (Myers) and "there is and will be no likelihood of confusion . . . at least based on the substantial differences in the marks themselves and the goods and services claimed in the

---

[4] The parties' consent agreement is confidential so we will refer to the provisions in the agreement generally.

[5] Holmes submits that these provisions of the parties' agreement provide "for restrictions on use that are designed to avoid any possible confusion."

respective registrations and applications . . . . [as] the respective marks and services are not the same." (Holmes).

Considering the parties' consent agreement, taken together with the parties' statements in the record, we find that this agreement between parties who are familiar with trade and market practices for their respective services is adequate evidence that confusion is unlikely and supports Holmes' right to register the mark in question. *In re Four Seasons Hotels Ltd*., 26 USPQ2d at 1071; *Bongrain Int'l Corp. v. Delice de France Inc*., 1 USPQ2d at 1775; see also *In re N.A.D. Inc*., 754 F.2d 996, 224 USPQ 969, 970 (Fed. Cir. 1985)("While we are uninformed as to all the details of the disputes and negotiations, these competitors clearly thought out their commercial interests with care. We think it highly unlikely that they would have deliberately created a situation in which the sources of their respective products would be confused by their customers.").

Accordingly, in view of the parties' consent agreement, the geographic restriction to Holmes's application Serial No. 78241974 is approved.

Decision:

Myers' Registration No. 2550461 for the mark MYERS CRUIZZERS DRIVE-IN remains unrestricted, in accordance with the parties' agreement.

Holmes' application Serial no. 78241974 for the mark



will be restricted to the entire United States with the exception of Arkansas.